UNITED STATES BANKRUPTCY COURT
DISTRICT OF OREGON

In re                                    )     Case No. _____
                                         )
                                         )
                                         )     **Notice of Motion for Relief**
                                         )     **From (Check All That Apply):**
                                         )          **Automatic Stay in a Chapter 7/13 Case**
                                         )          **Chapter 13 Codebtor Stay**
                                         )
Debtor(s)                                )

1. **YOU ARE NOTIFIED** that a motion was filed by _____, the moving party, for (Check all that apply):

    Relief from the automatic stay protecting the debtor(s) and debtor's property, as provided by 11 U.S.C. § 362.

    Relief from the stay protecting the codebtor and codebtor's property as provided by 11 U.S.C. § 1301. Codebtor's name and service address are: _____

    _____.

2. A copy of the motion is attached.  The name and service address of the moving party's attorney (or moving party, if no attorney) are: _____

    _____.

3. If you wish to resist the motion, you must, within 14 days of the service date shown below, file the following with the clerk at 1050 SW 6th Ave. #700, Portland OR 97204 or 405 E. 8th Ave. #2600, Eugene OR 97401:

    a. A written response that states the facts supporting the opposition to the motion by filling in the applicable "response" portions on a copy of the original motion. If the response will be electronically filed, the response must be prepared using the fillable pdf version of the original motion unless the motion was filed on paper and could not be electronically obtained from the movant; and

    b. A fully completed notice of hearing using Local Bankruptcy Form (LBF) 721, including the date and time of the hearing. Available hearing dates and times are posted at https://www.orb.uscourts.gov under the "Hearings" heading.  If you do not have internet access, please call the court at (503) 326-1500 or (541) 431-4000 and press "0" to obtain the required forms and hearing information.

4. **Failure to Object or Serve Proper Notice of Hearing**. If you fail to file a timely response and notice of hearing, then the automatic stay may expire as to the debtor(s) pursuant to 11 U.S.C. § 362(e) and the stay protecting the codebtor may expire pursuant to 11 U.S.C. § 1301(d), or the court may sign an order without further notice, submitted by the moving party on LBF 720.90, granting relief from the debtor stay and/or codebtor stay.

**720 (12/1/2018)**                          Page 1 of 2

I certify that:

(1)  The motion was prepared using the fillable PDF version of LBF 720.80; and

(2) On _____ this notice and the motion were served on the debtor(s), any codebtor at the address listed above, the trustee, the U.S. Trustee, members of any committee elected pursuant to 11 U.S.C. § 705, and their respective attorneys.

|  |  |
|---|---|
| Signature of Moving Party or Attorney | (OSB#) |

UNITED STATES BANKRUPTCY COURT
DISTRICT OF OREGON

In re

Case No. _____
Amended

**[*Check all applicable boxes*]**
**CHAPTER 7/13 MOTION FOR RELIEF FROM**
     **Debtor     Chapter 13 Codebtor Stay**
**Filed by Movant:**

_____

**Objection to Stay Motion filed by Respondent:**

Debtor

_____

*Instructions to movant: You must file this motion with a notice of motion on Local Bankruptcy Form (LBF) 720. See LBF 720.50, Procedures re: Motions for Relief from Stay, for more information.*

1. **Debt, Default, Other Encumbrances, Description and Value of Collateral** [*To be completed by movant*]

   a. Description of collateral [*e.g., car model, year, and VIN, or property address*]:

   b. Amount of debt: $ _____, consisting of principal of $ _____,  interest  of $ _____, and other:

   c. Description, amount, and priority of other encumbrances on collateral. If not known, include applicable information from debtor's schedules if available on PACER:

      Total debt secured by collateral [*1.b. + 1.c.*]: $ _____.

   d. Value of collateral: $_____.
      Equity in collateral: $_____, after deducting $_____ of liquidation costs.

   e. Current monthly payment: $_____.

   f. If Chapter 13:

      (1) $_____ postpetition default consisting of [*e.g., $ _____ payments, $_____ late charges, $ _____ fees*]:

(2) $_____ prepetition default consisting of          amounts  specified  in  proof  of claim, or,          consisting of:

g.  If Chapter 7, total amount of default: $_____.

**OBJECTION** [*Identify specific items disputed and specify what you contend are the pertinent facts, including why there is a postpetition default, if applicable; to be completed by respondent*]:

2.  **Relief from Stay Should be Granted Because:** [*Check all that apply; to be completed by movant*]:

Lack of insurance on collateral.

No equity in the collateral and the property is not necessary for an effective reorganization.

Failure of debtor to make Chapter 13 plan payments to the trustee.

Failure of debtor to make direct payments required by Chapter 13 plan.

Other [*describe*]:

**OBJECTION** [*Specify why relief from stay should be denied. If respondent proposes to cure a postpetition default, detail the cure by attaching a proposed order using LBF 720.90 available at https://www.orb.uscourts.gov under Forms/Local Forms; to be completed by respondent*]:

3.  **Background** [*To be completed by movant)*

a.  Date petition filed: _____ Current Chapter: _____ (7 or 13)

If 13, current plan date _____ Confirmed:      Yes      No

If 13, treatment of movant's prepetition claim(s) in plan:

If 7, debtor      has      has not stated on Official Form B 108 that debtor intends to surrender the collateral.

b.  Movant has a lien on the collateral by virtue of [*check all applicable sections, see also paragraph 6 below*]:

Security agreement, trust deed, or land sale contract dated _____ and any assignment of that interest to movant. The security interest was perfected as required by applicable law on _____.

Retail installment contract dated _____ and any assignment of that interest to movant. The security interest was perfected on the certificate of title on _____.

Other [*describe*]:

**OBJECTION** [*Identify any disputed items and specify the pertinent facts; to be completed by respondent*]:

4. **Request for Relief from Codebtor Stay** [*Chapter 13 only*]
   a. _____, whose address is _____ _____, is a codebtor on the obligation described above, but is not a debtor in this bankruptcy.

   b. Movant should be granted relief from the codebtor stay because [*check all that apply*]:
   codebtor received the consideration for the claim held by movant    debtor's plan does not propose to pay movant's claim in full    movant's interest would be irreparably harmed by continuation of the codebtor stay as a result of the default(s) described above    because:

**OBJECTION** [*Identify any disputed items and specify the pertinent facts; to be completed by respondent*]:

5. **Other Pertinent Information** [*To be completed by movant, if applicable*]:

**OBJECTION** [*Identify any disputed items and specify the pertinent facts; to be completed by respondent*]:

6. **Relief Requested** [*Check all applicable sections*; *to be completed by movant*]:

Movant requests relief from the automatic stay to allow it to foreclose its lien on the collateral and to take any necessary action to obtain possession of the collateral.

Movant has a security interest in real property and requests relief from stay of an act against the collateral and that the relief be binding in any other bankruptcy case purporting to affect the collateral filed not later than 2 years after the date of the entry of an order granting this motion. [*If you check this box, you must complete paragraph 5 above to support this request. If you do not do so, the Court will not grant relief binding in any other bankruptcy case.*]

Movant requests that the 14-day stay provided by FRBP 4001(a)(4) be waived based on the following cause:

Other [*describe and explain cause*]:

**OBJECTION** [*Identify any disputed items and specify the pertinent facts. If respondent agrees to some relief, attach a proposed order using* LBF 720.90 *available at* https://www.orb.uscourts.gov *under Forms/Local Forms; to be completed by respondent*]:

7. **Documents**:

**If movant claims to be secured in paragraph 3.b. above,** movant has attached to and filed with this motion a copy of the documents creating and perfecting the security interest, if not previously attached to a proof of claim.

**If this case is a chapter 13 case and the collateral is real property**, movant has attached to and filed with this motion a postpetition payment history current to a date not more than 30 days before this motion is filed, showing for each payment the amount due, the date the payment was received, the amount of the payment, and how movant applied the payment.

**RESPONDENT requests movant provide** respondent with the following document(s), if any are marked below, which are pertinent to this objection:

Postpetition payment history, if not required above.

Documents establishing that movant owns the debt described in paragraph 1 or is otherwise a proper party to bring this motion.

Other document(s) [*describe*]:

<u>Movant/Attorney</u>

<u>Respondent /Attorney</u>

*(By signing, the respondent also certifies that the respondent has not altered the information completed by movant.)*

Signature: _____

Name: _____

Address: _____

_____

Email: _____

Phone #: _____

OSB#: _____

Signature:_____

Name:_____

Address:_____

_____

Email:_____

Phone #:_____

OSB#:_____

*You are hereby notified that the creditor is attempting to collect a debt and any information obtained will be used for that purpose.*

**720.80 (12/1/2024)**                              Page 5 of 5

[redacted]

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $903,000.00 | 05-27-2022 | 06-01-2052 | [redacted] | | | | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** Azure Sky Leasing Inc
19230 Southeast McLoughlin Boulevard
Gladstone, OR 97027

**Lender:** Silver Hill Funding, LLC
4425 Ponce de Leon Blvd.
5th Floor
Coral Gables, FL 33146

**Principal Amount: $903,000.00** **Date of Note: May 27, 2022**

**PROMISE TO PAY.** Azure Sky Leasing Inc ("Borrower") promises to pay to Silver Hill Funding, LLC ("Lender"), or order, in lawful money of the United States of America, the principal amount of Nine Hundred Three Thousand & 00/100 Dollars ($903,000.00), together with interest on the unpaid principal balance from May 27, 2022, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 7.125%, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.** Borrower will pay this loan in 360 payments of $6,147.55 each payment. Borrower's first payment is due July 1, 2022, and all subsequent payments are due on the same day of each month after that. Borrower's final payment will be due on June 1, 2052, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied first to any escrow or reserve account payments as required under any mortgage, deed of trust, or other security instrument or security agreement securing this Note; then to any accrued unpaid interest; then to principal; and then to any late charges. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method. This calculation method results in a higher effective interest rate than the numeric interest rate stated in this Note.

**PREPAYMENT PENALTY.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Upon prepayment of this Note, Lender is entitled to the following prepayment privilege penalty: a. No Lockout. There shall be no lockout period in connection with any full or partial prepayment of the principal balance of this Note ( a "Prepayment"). Accordingly, all referenced to a "Lockout Prepayment" or "Lockout Fee" herein shall not be applicable.

b. Prepayment Period. At any time during the Prepayment Period (as defined below), the principal balance of this Note may be prepaid in whole, but not in part, pursuant to the terms contained herein. If Borrower makes any Prepayment within the first Five years after the date of this Note (the "Prepayment Period"), the Borrower shall be obligated to pay to Lender the following amounts:

(i) an amount equal to Five percent (5.000%) of the then outstanding unpaid principal balance of this Note (the "Prepayment Consideration"): and
(ii) all accrued interest on the outstanding principal balance to and including date on which the Prepayment is made; and
(iii) all other sums due under this Note, the Security Instrument and all Other Security Documents.

c. Prepayments Without Consideration. No Prepayment Consideration or Lockout Fee (if any) shall be due or payable with respect to any full or partial Prepayment made by Borrower after the expiration of the Prepayment Period.

d. Notice of Prepayment. Prior to making any Prepayment, Borrower must provide Lender with not less than sixty (60) days advance written notice of Borrower's intent to make such Prepayment. Such notice must specify: (i) the date on which Prepayment is to be made, and (ii) the principal amount of such Prepayment. Lender shall not be obligated to accept any Prepayment unless it is accompanied by all other amounts due in connection therewith.

e. Permitted Prepayment Date. Borrower may only make a Prepayment on a regularly scheduled Payment Date, as defined in this Note. Lender shall not be required to accept any Prepayment made on a date other than a regularly scheduled Payment Date, then Borrower shall be required to pay all interest that would have accrued through the next scheduled Payment Date.

f. Insurance/Condemnation Payments. Notwithstanding anything to the contrary contained herein, and provided no Event of Default exists, no Prepayment Consideration shall be due in connection with any Prepayment resulting from the application of insurance proceeds or condemnation awards pursuant to the terms of the Security Instrument or changes in tax and debt credit pursuant to the terms of the Security Instrument.

For purposes of this Section, the terms "Lockout Prepayment" and "Prepayment" shall include, without limitation, any prepayment of principal that occurs as a result of any Event of Default in any of the Loan Documents or an acceleration of the Maturity Date under any circumstances, any prepayment of principal occurring in connection with foreclosure proceedings or exercise of any applicable power of sale, any statutory right of redemption exercised by Borrower or any other party having a statutory right to redeem or prevent foreclosure, any sale in foreclosure or under exercise of any applicable power of sale, deed in lieu of foreclosure or otherwise, and any other voluntary or involuntary prepayment of principal made by Borrower. Except for the foregoing, Borrower may pay all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. **All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Silver Hill Funding, LLC; 4425 Ponce de Leon Blvd.; 5th Floor; Coral Gables, FL 33146.**

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged **5.000% of the unpaid portion of the regularly scheduled payment.**

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased by 10.000 percentage points. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Environmental Default.** Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with any loan.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Change In Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Oregon without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Oregon.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of the State of Oregon, in the county in which Borrower's following address is located: 19230 Southeast McLoughlin Boulevard, Gladstone, OR 97027.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** Borrower acknowledges this Note is secured by the following collateral described in the security instruments listed herein:

(A) a Deed of Trust dated May 27, 2022, to a trustee in favor of Lender on real property located in Clackamas County, State of Oregon.

(B) an Assignment of All Rents to Lender on real property located in Clackamas County, State of Oregon.

(C) a Commercial Security Agreement dated May 27, 2022 made and executed between Azure Sky Leasing Inc and Lender on collateral described as: inventory, chattel paper, accounts, equipment, general intangibles, fixtures, standing timber and mineral, oil and gas.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

DocuSign Envelope ID

**PROMISSORY NOTE**
**(Continued)**

Loan N                                                                                                                        Page 3

UNDER OREGON LAW, MOST AGREEMENTS, PROMISES AND COMMITMENTS MADE BY US (LENDER) CONCERNING LOANS AND OTHER CREDIT EXTENSIONS WHICH ARE NOT FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES OR SECURED SOLELY BY THE BORROWER'S RESIDENCE MUST BE IN WRITING, EXPRESS CONSIDERATION AND BE SIGNED BY US TO BE ENFORCEABLE.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

AZURE SKY LEASING INC

By: _____
Bernard    D.    Bos,    President,    Sole-Director    &
Sole-Shareholder of Azure Sky Leasing Inc

LaserPro, Ver. 21.3.0.041  Copr. Finastra USA Corporation 1997, 2022.  All Rights Reserved.  - OR  C:\CFI\LPL\D20.FC  TR-4008  PR-15

## ALLONGE TO NOTE

**FOR PURPOSES OF FURTHER ENDORSEMENT OF THE NOTE
REFERRED TO BELOW:**

BORROWERS:                                Azure Sky Leasing Inc, a OR Corporation.

LENDER:                                   SILVER HILL FUNDING, LLC.

DATED:                                    5/27/2022

ORIGINAL PRINCIPAL BALANCE:               $903,000.00

PAY TO THE ORDER OF:

COMMUNITY LOAN SERVICING, LLC

WITHOUT RECOURSE:

SILVER HILL FUNDING, LLC.

By: _____
    Michael Rueda, Assistant Vice-President

# ALLONGE TO NOTE

FOR PURPOSES OF FURTHER ENDORSEMENT OF THE NOTE
REFERRED TO BELOW:

BORROWERS:                               Azure Sky Leasing Inc, a OR Corporation.

LENDER:                                  COMMUNITY LOAN SERVICING, LLC

DATED:                                   5/27/2022

ORIGINAL PRINCIPAL BALANCE:              $903,000.00


PAY TO THE ORDER OF:

_____

WITHOUT RECOURSE:

COMMUNITY LOAN SERVICING, LLC

By:_____
    Michael Rueda, Assistant Vice-President

**RECORDATION REQUESTED BY:**
Silver Hill Funding, LLC
4425 Ponce de Leon Blvd.
5th Floor
Coral Gables, FL  33146

█EN RECORDED MAIL TO:
Indecomm Holdings Inc.
1427 Energy Park Drive
St Paul , MN  55108

█ND TAX NOTICES TO:
Silver Hill Funding, LLC
4425 Ponce de Leon Blvd.
5th Floor
Coral Gables, FL  33146

| Clackamas County Official Records<br>Sherry Hall, County Clerk | **2022-031051** |
| --- | --- |
| | 05/31/2022 10:44:08 AM |
| M-TD              Cnt=1 Stn=7 LISA<br>$80.00 $16.00 $10.00 $62.00 | **$168.00** |

**FOR RECORDER'S USE ONLY**



## DEED OF TRUST

**THIS DEED OF TRUST is dated May 27, 2022, among Azure Sky Leasing Inc, an Oregon corporation, whose address is 19230 Southeast McLoughlin Boulevard, Gladstone, OR  97027 ("Grantor"); Silver Hill Funding, LLC, whose address is 4425 Ponce de Leon Blvd., 5th Floor, Coral Gables, FL  33146 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and WFG National Title Insurance Company, whose address is 700 NE Multnomah Street, Suite 190, Portland, OR  97232 (referred to below as "Trustee").**

**CONVEYANCE AND GRANT.** For valuable consideration, represented in the Note dated May 27, 2022, in the original principal amount of $903,000.00, from Grantor to Lender, Grantor conveys to Trustee for the benefit of Lender as.Beneficiary all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in Clackamas County, State of Oregon:

> See Exhibit A, which is attached to this Deed of Trust and made a part of this Deed of Trust as if fully set forth herein.

The Real Property or its address is commonly known as  19230 McLoughlin Blvd, Gladstone, OR  97027. The Real Property tax identification number i█████

Grantor presently assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

**THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE  (A)  PAYMENT OF THE INDEBTEDNESS AND  (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS DEED OF TRUST.  THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:**

# DEED OF TRUST
## (Continued)

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Deed of Trust, Grantor shall pay to Lender all amounts secured by this Deed of Trust as they become due, and shall strictly and in a timely manner perform all of Grantor's obligations under the Note, this Deed of Trust, and the Related Documents.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Grantor agrees that Grantor's possession and use of the Property shall be governed by the following provisions:

**Possession and Use.** Until the occurrence of an Event of Default, Grantor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property. The following provisions relate to the use of the Property or to other limitations on the Property. BEFORE SIGNING OR ACCEPTING THIS INSTRUMENT, THE PERSON TRANSFERRING FEE TITLE SHOULD INQUIRE ABOUT THE PERSON'S RIGHTS, IF ANY, UNDER ORS 195.300, 195.301 AND 195.305 TO 195.336 AND SECTIONS 5 TO 11, CHAPTER 424, OREGON LAWS 2007, SECTIONS 2 TO 9 AND 17, CHAPTER 855, OREGON LAWS 2009, AND SECTIONS 2 TO 7, CHAPTER 8, OREGON LAWS 2010. THIS INSTRUMENT DOES NOT ALLOW USE OF THE PROPERTY DESCRIBED IN THIS INSTRUMENT IN VIOLATION OF APPLICABLE LAND USE LAWS AND REGULATIONS. BEFORE SIGNING OR ACCEPTING THIS INSTRUMENT, THE PERSON ACQUIRING FEE TITLE TO THE PROPERTY SHOULD CHECK WITH THE APPROPRIATE CITY OR COUNTY PLANNING DEPARTMENT TO VERIFY THAT THE UNIT OF LAND BEING TRANSFERRED IS A LAWFULLY ESTABLISHED LOT OR PARCEL, AS DEFINED IN ORS 92.010 OR 215.010, TO VERIFY THE APPROVED USES OF THE LOT OR PARCEL, TO DETERMINE ANY LIMITS ON LAWSUITS AGAINST FARMING OR FOREST PRACTICES, AS DEFINED IN ORS 30.930, AND TO INQUIRE ABOUT THE RIGHTS OF NEIGHBORING PROPERTY OWNERS, IF ANY, UNDER ORS 195.300, 195.301 AND 195.305 TO 195.336 AND SECTIONS 5 TO 11, CHAPTER 424, OREGON LAWS 2007, SECTIONS 2 TO 9 AND 17, CHAPTER 855, OREGON LAWS 2009, AND SECTIONS 2 TO 7, CHAPTER 8, OREGON LAWS 2010.

**Duty to Maintain.** Grantor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.** Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Deed of Trust. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Deed of Trust, including the obligation

DocuSign Envelope ID

to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Deed of Trust.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. If any Grantor is a corporation, partnership or limited liability company, transfer also includes any restructuring of the legal entity (whether by merger, division or otherwise) or any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of such Grantor. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Oregon law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Deed of Trust:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due and except as otherwise provided in this Deed of Trust.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a

good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Deed of Trust.

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a fair value basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Grantor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Trustee and Lender being named as additional insureds in such liability insurance policies. Additionally, Grantor shall maintain such other insurance, including but not limited to hazard, business interruption, and boiler insurance, as Lender may reasonably require. Policies shall be written in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Administrator of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain flood insurance, if available, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan. Flood insurance may be purchased under the National Flood Insurance Program, from private insurers providing "private flood insurance" as defined by applicable federal flood insurance statutes and regulations, or from another flood insurance provider that is both acceptable to Lender in its sole discretion and permitted by applicable federal flood insurance statutes and regulations.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Deed of Trust. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender

has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Deed of Trust, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**Grantor's Report on Insurance.** Upon request of Lender, however not more than once a year, Grantor shall furnish to Lender a report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and (5) the expiration date of the policy. Grantor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**TAX AND INSURANCE RESERVES.** Subject to any limitations and consistent with any requirements set by applicable law, Lender may require Grantor to maintain with Lender reserves for payment of annual taxes, assessments, and insurance premiums, which reserves shall be created by an initial deposit and subsequent monthly payments, or payments at such other interval as payments under the Note may be due, of a sum estimated by Lender to be sufficient to pay the total annual taxes, assessments, and insurance premiums Lender reasonably anticipates to be paid from these reserves. The reserve funds shall be held by Lender as a general deposit from Grantor, which Lender may satisfy by payment of the taxes, assessments, and insurance premiums required to be paid by Grantor as they become due. Lender shall have the right to draw upon the reserve funds to pay such items, and Lender shall not be required to determine the validity or accuracy of any item before paying it. Nothing in the Deed of Trust shall be construed as requiring Lender to advance other monies for such purposes, and Lender shall not incur any liability for anything it may do or omit to do with respect to the reserve account. Subject to any limitations set by applicable law, if the reserve funds disclose a shortage or deficiency, Grantor shall pay such shortage or deficiency as required by Lender. All amounts in the reserve account are hereby pledged to further secure the Indebtedness, and Lender is hereby authorized to withdraw and apply such amounts on the Indebtedness upon the occurrence of an Event of Default. Lender shall not be required to pay any interest or earnings on the reserve funds unless required by law or agreed to by Lender in writing. Lender does not hold the reserve funds in trust for Grantor, and Lender is not Grantor's agent for payment of the taxes and assessments required to be paid by Grantor.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Deed of Trust or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Deed of Trust or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Deed of Trust also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon the occurrence of any Event of Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Deed of Trust:

**Title.** Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Deed of Trust, and (b) Grantor has the full right, power, and authority to execute and deliver this Deed of Trust to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Trustee or Lender under this Deed of Trust, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Deed of Trust shall survive the execution and delivery of this Deed of Trust, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Deed of Trust:

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Trustee or Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Deed of Trust:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Deed of Trust and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Deed of Trust, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Deed of Trust.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Deed of Trust or upon all or any part of the Indebtedness secured by this Deed of Trust; (2) a specific tax on Grantor which Grantor is authorized or required to deduct from payments on the Indebtedness secured by this type of Deed of Trust; (3) a tax on this type of Deed of Trust chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Grantor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Deed of Trust, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Deed of Trust as

a security agreement are a part of this Deed of Trust:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. In addition to recording this Deed of Trust in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Deed of Trust as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Deed of Trust.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Deed of Trust:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Grantor's obligations under the Note, this Deed of Trust, and the Related Documents, and (2) the liens and security interests created by this Deed of Trust as first and prior liens on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Grantor pays all the Indebtedness when due, and otherwise performs all the obligations imposed upon Grantor under this Deed of Trust, Lender shall execute and deliver to Trustee a request for full reconveyance and shall execute and deliver to Grantor suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Any reconveyance fee required by law shall be paid by Grantor, if permitted by applicable law.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Deed of Trust:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Deed of Trust or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

# DEED OF TRUST
## (Continued)

**Compliance Default.** Failure to comply with any other term, obligation, covenant or condition contained in this Deed of Trust, the Note or in any of the Related Documents.

**Default on Other Payments.** Failure of Grantor within the time required by this Deed of Trust to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Environmental Default.** Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with the Property.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Deed of Trust or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Deed of Trust or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.** The dissolution or termination of Grantor's existence as a going business, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.** Any breach by Grantor under the terms of any other agreement between Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Grantor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Deed of Trust, at any time thereafter, Trustee or Lender may exercise any one or more of the following rights and remedies:

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Deed of Trust, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty which Grantor would be required to pay.

**Foreclosure.** With respect to all or any part of the Real Property, the Trustee shall have the right to

foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law. If this Deed of Trust is foreclosed by judicial foreclosure, Lender will be entitled to a judgment which will provide that if the foreclosure sale proceeds are insufficient to satisfy the judgment, execution may issue for the amount of the unpaid balance of the judgment.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** Lender shall have the right, without notice to Grantor to take possession of and manage the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Tenancy at Sufferance.** If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Trustee or Lender shall have any other right or remedy provided in this Deed of Trust or the Note or available at law or in equity.

**Notice of Sale.** Lender shall give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least fifteen (15) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Sale of the Property.** To the extent permitted by applicable law, Grantor hereby waives any and all rights to have the Property marshalled. In exercising its rights and remedies, the Trustee or Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost

of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**Rights of Trustee.** Trustee shall have all of the rights and duties of Lender as set forth in this section.

**POWERS AND OBLIGATIONS OF TRUSTEE.** The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust:

**Powers of Trustee.** In addition to all powers of Trustee arising as a matter of law, Trustee shall have the power to take the following actions with respect to the Property upon the written request of Lender and Grantor: (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public; (b) join in granting any easement or creating any restriction on the Real Property; and (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Lender under this Deed of Trust.

**Obligations to Notify.** Trustee shall not be obligated to notify any other party of a pending sale under any other trust deed or lien, or of any action or proceeding in which Grantor, Lender, or Trustee shall be a party, unless the action or proceeding is brought by Trustee.

**Trustee.** Trustee shall meet all qualifications required for Trustee under applicable law. In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

**Successor Trustee.** Lender, at Lender's option, may from time to time appoint a successor Trustee to any Trustee appointed under this Deed of Trust by an instrument executed and acknowledged by Lender and recorded in the office of the recorder of Clackamas County, State of Oregon. The instrument shall contain, in addition to all other matters required by state law, the names of the original Lender, Trustee, and Grantor, the book and page where this Deed of Trust is recorded, and the name and address of the successor trustee, and the instrument shall be executed and acknowledged by Lender or its successors in interest. The successor trustee, without conveyance of the Property, shall succeed to all the title, power, and duties conferred upon the Trustee in this Deed of Trust and by applicable law. This procedure for substitution of Trustee shall govern to the exclusion of all other provisions for substitution.

**NOTICES.** Any notice required to be given under this Deed of Trust, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Deed of Trust. All copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust shall be sent to Lender's address, as shown near the beginning of this Deed of Trust. Any party may change its address for notices under this Deed of Trust by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**ASSOCIATION OF UNIT OWNERS.** The following provisions apply if the Real Property has been submitted to unit ownership law or similar law for the establishment of condominiums or cooperative ownership of the Real Property:

**Power of Attorney.** Grantor grants an irrevocable power of attorney to Lender to vote in Lender's discretion on any matter that may come before the association of unit owners. Lender shall have the right to exercise this power of attorney only after Grantor's default; however, Lender may decline to exercise this power as Lender sees fit.

**Insurance.** The insurance as required above may be carried by the association of unit owners on Grantor's behalf, and the proceeds of such insurance may be paid to the association of unit owners for the purpose

of repairing or reconstructing the Property. If not so used by the association, such proceeds shall be paid to Lender.

**Default.**   Grantor's failure to perform any of the obligations imposed on Grantor by the declaration submitting the Real Property to unit ownership, by the bylaws of the association of unit owners, or by any rules or regulations thereunder, shall be an event of default under this Deed of Trust. If Grantor's interest in the Real Property is a leasehold interest and such property has been submitted to unit ownership, any failure by Grantor to perform any of the obligations imposed on Grantor by the lease of the Real Property from its owner, any default under such lease which might result in termination of the lease as it pertains to the Real Property, or any failure of Grantor as a member of an association of unit owners to take any reasonable action within Grantor's power to prevent a default under such lease by the association of unit owners or by any member of the association shall be an Event of Default under this Deed of Trust.

**CONDITIONS FOR ASSUMPTION. If Grantor or any prospective transferee applies to Lender for written consent to a transfer Lender may, in Lender's sole and absolute discretion, require such information concerning the prospective transferee as would normally be required from a new loan applicant. In the event Lender consents to the transfer, Lender shall further be entitled to a fee in the amount of one percent (1%) of the outstanding balance of the Note in connection with the assumption of this Deed of Trust and Related Documents. .**

**MISCELLANEOUS PROVISIONS.**  The following miscellaneous provisions are a part of this Deed of Trust:

**Amendments.**   This Deed of Trust, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Deed of Trust. No alteration of or amendment to this Deed of Trust shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.**   If the Property is used for purposes other than Grantor's residence, Grantor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Grantor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.**  Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

**Merger.**   There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Governing Law.   This Deed of Trust will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Oregon without regard to its conflicts of law provisions.   This Deed of Trust has been accepted by Lender in the State of Oregon.**

**Choice of Venue.**   If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of the State of Oregon, in the county in which Grantor's following address is located: 19230 Southeast McLoughlin Boulevard, Gladstone, OR 97027.

**No Waiver by Lender.**   Lender shall not be deemed to have waived any rights under this Deed of Trust unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Deed of Trust shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Deed of Trust. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Deed of Trust, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Deed of Trust to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Deed of Trust. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Deed of Trust shall not affect the legality, validity or enforceability of any other provision of this Deed of Trust.

**Successors and Assigns.** Subject to any limitations stated in this Deed of Trust on transfer of Grantor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Deed of Trust and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Deed of Trust or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Deed of Trust.

**Waive Jury.** All parties to this Deed of Trust hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**Waiver of Homestead Exemption.** Grantor hereby releases and waives all rights and benefits of the homestead exemption laws of the State of Oregon as to all Indebtedness secured by this Deed of Trust.

**Commercial Deed of Trust.** Grantor agrees with Lender that this Deed of Trust is a commercial deed of trust and that Grantor will not change the use of the Property without Lender's prior written consent.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Deed of Trust. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Deed of Trust shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Beneficiary.** The word "Beneficiary" means Silver Hill Funding, LLC, and its successors and assigns.

**Borrower.** The word "Borrower" means Azure Sky Leasing Inc and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Deed of Trust.** The words "Deed of Trust" mean this Deed of Trust among Grantor, Lender, and Trustee, and includes without limitation all assignment and security interest provisions relating to the Personal Property and Rents.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto or intended to protect human health or the environment.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Deed of Trust in the events of default section of this Deed of Trust.

**Grantor.** The word "Grantor" means Azure Sky Leasing Inc.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum, including crude oil and any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Trustee or Lender to enforce Grantor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust.

**Lender.** The word "Lender" means Silver Hill Funding, LLC, its successors and assigns.

**Note.** The word "Note" means the promissory note dated May 27, 2022, **in the original principal amount of $903,000.00** from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. The maturity date of the Note is June 1, 2052.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Deed of Trust.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

**Trustee.** The word "Trustee" means WFG National Title Insurance Company, whose address is 700 NE Multnomah Street, Suite 190, Portland, OR 97232 and any substitute or successor trustees.

# DEED OF TRUST
## (Continued)

Page 14

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND GRANTOR AGREES TO ITS TERMS.

GRANTOR: ·

AZURE SKY LEASING INC

By: _Bernd D Bos_

Bernard D. Bos, President, Sole-Director & Sole-Shareholder of
Azure Sky Leasing Inc

---

## CORPORATE ACKNOWLEDGMENT

STATE OF __Oregon__ )
                                              ) SS
COUNTY OF __Clatsop__ )

On this __27__ day of __May__, 20__22__, before me, the undersigned Notary Public, personally appeared **Bernard D. Bos, President, Sole-Director & Sole-Shareholder of Azure Sky Leasing Inc,** and known to me to be an authorized agent of the corporation that executed the Deed of Trust and acknowledged the Deed of Trust to be the free and voluntary act and deed of the corporation, by authority of its Bylaws or by resolution of its board of directors, for the uses and purposes therein mentioned, and on oath stated that he or she is authorized to execute this Deed of Trust and in fact executed the Deed of Trust on behalf of the corporation.

By _____

Notary Public in and for the State of __Oregon__

Residing at __89120 Ltc Rd Astoria__

My commission expires __7/21/2023__



OFFICIAL STAMP
Lâm Hong Quang
NOTARY PUBLIC - OREGON
COMMISSION NO. 989682
MY COMMISSION EXPIRES     July 21, 2023

## DEED OF TRUST
### (Continued)

Page 15

---

### REQUEST FOR FULL RECONVEYANCE
(To be used only when obligations have been paid in full)

To: _____, Trustee

The undersigned is the legal owner and holder of all Indebtedness secured by this Deed of Trust. All sums secured by this Deed of Trust have been fully paid and satisfied. You are hereby directed, upon payment to you of any sums owing to you under the terms of this Deed of Trust or pursuant to any applicable statute, to cancel the Note secured by this Deed of Trust (which is delivered to you together with this Deed of Trust), and to reconvey, without warranty, to the parties designated by the terms of this Deed of Trust, the estate now held by you under this Deed of Trust. Please mail the reconveyance and Related Documents to:

Date: _____

Beneficiary: _____

By: _____

Its: _____

---

LaserPro, Ver. 21.3.0.041   Copr. Finastra USA Corporation 1997, 2022.   All Rights Reserved.   - OR
C:\CFI\LPL\G01.FC TR-4006 PR-15

## EXHIBIT "A"
## LEGAL DESCRIPTION

Part of the Peter M. Rinearson Donation Land Claim in Section 19, Township 2 South, Range 1 East of the Willamette Meridian, in the City of Gladstone, County of Clackamas and State of Oregon, more particularly described as follows:

Beginning at the Northwesterly corner of a tract of land conveyed to Howard L. Oliver and Gussie M. Oliver, husband and wife, by Deed recorded on August 7, 1950 in Book 434, page 517, Deed Records, which beginning point is on the Easterly line of the East Portland-Oregon City Highway, North 28°10' West 615.00 feet from the intersection of said Highway boundary with the division line between the husband and wife's half of said Donation Land Claim; from said beginning point; thence North 28°10' West along said Highway boundary 88.00 feet to the Southwest corner of that certain tract of land conveyed to E.L. Burnham et al, by Deed recorded April 2, 1957 in Book 524, page 12, Deed Records; thence Northeasterly along the Southeasterly line of said Burnham tract a distance of 175.00 feet to a point on the Westerly line of a tract of land conveyed to Welter Park Development Company of Oregon, Ltd, by Deed recorded on July 27, 1950 in Book 434, page 160, Deed Records; thence South 28°10' East along the Westerly line of said Welter Park Development Company tract a distance of 88.00 feet to the most Northerly corner of said Oliver tract; thence South 64°14'30" West along the most Northerly line of said Oliver tract a distance of 175.00 feet to the place of beginning.

Revised 11/2016

PARCEL ID ████████████

Requested and Prepared by:
Clear Recon Corp
1050 SW 6th Avenue, Suite 1100
Portland, OR 97204

When Recorded Mail To:
Community Loan Servicing (Commercial)
1415 W. Cypress Creek Road, Ste 200
Fort Lauderdale, FL 33309

| Clackamas County Official Records | **2024-021045** |
|---|---|
| Catherine McMullen, County Clerk | 06/14/2024 02:40:02 PM |
| M-TDA    Cnt=1 Stn=73 LESLIE | |
| $5.00 $16.00 $10.00 $62.00 | **$93.00** |

SPACE ABOVE THIS LINE FOR RECORDER'S USE

████████████    ████████████    APN: ████████████

Property Address: **19230 MCLOUGHLIN BLVD GLADSTONE, OR 97027**

## ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned **SILVER HILL FUNDING, LLC** hereby grants, assigns and transfers to **COMMUNITY LOAN SERVICING, LLC FKA BAYVIEW LOAN SERVICING, LLC**, interest as beneficiary under that certain Deed of Trust dated: **5/27/2022** executed by **AZURE SKY LEASING INC, AN OREGON CORPORATION**, Trustor(s), to **WFG NATIONAL TITLE INSURANCE COMPANY**, original trustee, and recorded on **5/31/2022**, as Instrument No. **2022-031051**, of Official Records, in the office of the County Recorder's office of **Clackamas** County, **Oregon** and described as follows: encumbering the land as fully described in said Deed of Trust and all rights accrued or to accrue under said Deed of Trust.

Date: June 11, 2024        SILVER HILL FUNDING, LLC

By: _____
Title:              Peter L. Suarez
                    Asst. Vice President

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of **FLORIDA**      } ss.
County of **MIAMI-DADE**  }

On June 11, 2024 before me, **Isabel Gomez**, Notary Public, personally appeared **Peter L. Suarez**, AVP who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of said State that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

ISABEL GOMEZ
MY COMMISSION # HH 492059
EXPIRES: May 7, 2027

Page 1 of 1

Coral Gables De...
Office

| | |
|---|---|
| Loan Number: ████ | Vendor: Lizbeth Hale |
| Borrower: LEASING INC | Address: 8305 SE Monterey Ave Suite 220 J |
| Property Address: 19230 McLoughlin Blvd | Phone #: ████ |
| City, County, ST Zip: Gladstone, OR 97027 | Fax #: na |
| Assessor's Parcel #: ████ | email address: ████ |

Local Market and Value Trends: The economy is increasing, employment conditions are stable. The subject is located in an suburban neighborhood with increasing property values and a decreasing balanced supply Vs demand of homes.

Property Description: Office

| | | | # of Units | Unit Size (SF) | Market Rent | | Real Estate Taxes | |
|---|---|---|---|---|---|---|---|---|
| Year Built: | 1968 | | | 1 | 1000 | 2,000 | Assessed Value | $652,748 |
| Construction Type: | Frame | | | 1 | 3,000 | 4500 | Assessed Year | 2023 |
| Site Size: | 15,246 | | | | | | Annual Taxes $ | 13,128 |
| Building Size: | 4,000 | | | | | | Delinquent Amt. $ | - |
| # of Units Vacant: | 0 | | | | | | | |
| Size of Vacant Units: | 0 | | | | | | | |

| | | | |
|---|---|---|---|
| | | Total # of Units: 2 | Wtd. Average Rent: $2,500.00 |

List Occupant's Names: Towles Garden (townhouse community) office 239-332-0744

| | | | | | |
|---|---|---|---|---|---|
| Subject Condition: Avg | | Subject Location: Avg | | Subject Compatible to | No |
| Sub. Listed for Sale: No | List Price: | | Time on Market: | Agent Phone #: | |
| Sub. Listed for Lease: No | Asking Rent: | | Time on Market: | Agent Phone #: | |

Property Comments: Subject is a commercial property with GLA 4000 , situated in a lot of 0.35 acres , built in 1968. Due to lack of comparable it was necessary to use 2 sold comp which exceed sold date beyond 6 months from the date of this report and i have also went up to 4 mile to get appropriate comparable. For the same reason I was forced to exceed year built , lot and gla. Given adjustments for all exceeding criteria. Value is derived from

Please discuss any deferred maintenance or vacancy issues: None

| Income Approach: | PGI: | | R.E. Taxes: $ | 13,128 | | Market Cap Rate Range: | |
|---|---|---|---|---|---|---|---|
| | Other Income: $ | - | Operating Exp.'s: $ | - | | 3.0% | 7.0% |
| #DIV/0! | - Vac. & Coll. Loss $ | - | | $ | | CAP Rate: | 6.7 |
| | EGI: | | Total Expenses: $ | 13,128 | | NOI: $ | 127,144 |
| | | | #DIV/0! | | | Value Conclusion: | 851864 |

| | Sale 1 | Sale 2 | Sale 3 | | Rental 1 | Rental 2 | Rental 3 |
|---|---|---|---|---|---|---|---|
| Address | 1722 8th Ave | 480 Portland Avenue | 2500 Willomette Falls Dr | Address | 17635 SE McLoughlin Blvd | 35 82nd Dr | 16001 SE Mcloughlin Blvd |
| City | Westlinn | Gladstone | West Linn | City | Milwaukie | Gladstone | Milwaukie |
| Dist. to Subject | 3.65 Miles | 0.65 Miles | 3.11 Miles | Dist. to Subject | 0.91 Miles | 1.18 Miles | 5.17 Miles |
| Year Built | 1960 | 1978 | 1989 | Year Built | 1974 | 1978 | 1952 |
| Property Type | commercial | commercial | commercial | Property Type | commercial | commercial | commercial |
| Building Size (SF) | 3,604 | 5,500 | 6,144 | Size of Leased Area | 5,000 | 3,000 | 6,000 |
| Date of Sale | 10/27/2023 | 6/13/2023 | 12/12/2023 | Rent Per SF $ | 19.92 | $ 22.00 | $ 27.00 |
| Sales Price | $ 985,000 | $ 1,275,000 | $ 1,447,000 | Gross/ Net Lease | 11.25 | 6.73 | 14.72 |
| $/SF | $ 273.31 | $ 231.81 | $ 235.51 | Visibility (3) | similar | similar | similar |
| Vacancy % at Sale | 0% | 0% | 0% | Access (3) | similar | similar | similar |
| Overall Expenses | 0 | 0 | 0 | Class A, B or C | A | A | A |
| Capitalization Rate | 4.20% | 5.50% | 6.00% | Concessions | 0 | 0 | 0 |
| PGRM (1) | None | None | None | Phone # of Agent | | | |
| Time on Market | 80 | 120 | 156 | Type of Bldg. (2) | Retail | Retail | Retail |
| Single or Multi Tenant | Single | Single | Single | Typical Lease Term | 1 Year | 1 Year | 1 Year |
| # of Units | 2 | 2 | 2 | Location (3) | similar | similar | similar |
| Visibility (3) | similar | similar | similar | Condition (3) | similar | similar | similar |
| Access (3) | similar | similar | similar | Overall Comp (3) | Superior | similar | Superior |
| Parking (3) | 2 Garage | None | None | | | | |
| Class A, B or C | A | A | A | | | $ Per Square Foot | $ |
| Location (3) | similar | similar | similar | Market Approach Value Estimate | | $257.66 | $1,030,645 |
| Condition (3) | similar | similar | similar | Income Approach Value Estimate | | $282.50 | 1130000 |
| Overall Comp.(3) | similar | Superior | Superior | Reconciled Market Value | | $282.50 | $1,130,000 |
| | | | | Marketing Time | 120 days | | |

| | | |
|---|---|---|
| Date Completed: 5/8/2024 | Agent's Name: Lizbeth Hale | Phone #: ████ |

**Broker Narrative**

| | | | |
|---|---|---|---|
| Date: | 5/8/2024 | Broker: | Lizbeth Hale |
| Cummunity BPO# | ███████ | Company: | Tree City Real Estate |
| Property Address: | 19230 McLoughlin Blvd | | |
| | Gladstone, OR 97027 | | |

**Subject Property Location:**

The subject is located in a commercial neighborhood and conforms to the neighborhood that displays general similarity in design, appeal, and utility with variations in size. There are no adverse site conditions or shopping, and transportation are good. external factors such as easements, encroachments, environmental conditions or land uses. Proximity and convenience to employment, schools, parks,

**General Market Conditions:**

The economy is increasing, employment conditions are stable. The subject is located in an suburban neighborhood with increasing property values and a decreasing balanced supply Vs demand of homes.

**Building Condition:**

Based on the exterior observation, the subject appears to be in average condition with no signs of deferred maintenance visible.

**Comps on Market:**

Sold comp 1 is most similar in GBA and in year built to the subject . Sold comp 2 is superior in GBA to the subject. Sold comp 3 is superior in lot size and in year built to the subject.

**Comps Sold:**

Sold comp 1 is most similar in GBA to the subject

**Lease-up Potential**

In a commercial , there is also more maintanence, higher utility bills, no repair accountability, a higher deposit, longer lease term or renting from a private owner who neglets to repair the property on a single family rental.

**Roof Issues/Deferred Maintenance:**

No deffered maintenance visible.

| | | | |
|---|---|---|---|
| Drywall | _____ | Electrical | _____ |
| Painting | _____ | Plumbing | _____ |
| Roofing | _____ | Misc | _____ |
| Mold | _____ | Misc | _____ |
| | | Total | |

**Reconciled Market Value:**

None

**Conclusion:**

Subject is a commercial property with GBA 4000 , situated in a lot of 0.35 acres , built in 1968. Due to lack of comparable it was necessary to use 2 sold comps which exceed sold date beyond 6 months from the date of this report and i have also went up to 4 mile to get appropriate comparable. For the same reason I was forced to exceed year built , lot and gla. Given adjustments for all exceeding criteria. Value is derived from

**Date:** 5/13/2024     **Broker:** Lizbeth Hale

**Bayview BPO#:** ▮▮▮▮▮

**Property Address:** 19230 McLoughlin Blvd Gladstone, OR 97027

SLP_BPO_-_ver_7.0_-_Bayview_April_2011



Photo #  1  Address verification



Photo #  2  Subject front view



Photo #  3  Left side view



Photo #   4   Right side view



Photo #   5   Additional exterior



Photo #   6   Additional exterior



Photo #   7   Street view 1





Photo #  8  Additional exterior



Photo #  9  Additional exterior



Photo #  10  Sold comp 1



Photo # 11 Sold comp 2



Photo # 12 Sold comp 3



Leased comp 1



Photo # 14 Leased comp 2





Photo #  15

Photo #  16

Photo #  17

Lizbeth Hale    Tree City Real Estate                       lizbeth@treecityhomes.com

**Tax Report**
Tax ID:                                                                            5/15/2024 7:15PM

## Clackamas County, OR:

| | | |
|---|---|---|
| **Prop Addr:** 19230 MCLOUGHLIN BLVD GLADSTONE , OR 97027-2625 | **Latest Listing ID:** **County:** Clackamas **Carrier Rt:** C002 | |

## Owner Information:

**Owner Name:** AZURE SKY LEASING INC
**Owner Addr:** 14805 SE MONNER RD
HAPPY VALLEY , OR 97086

**Phone:**
**Carrier Rt:**

## Land Information:

**Lot SqFt:** 15246          **Acreage:** 0.35

## Building Information:

| | |
|---|---|
| **Year Built:** | **Bedrooms:** |
| **Stories:** | **Bathrooms:** 0 |
| **Living SF:** | **Parking SF:** |
| **Bldg SF Ind:** | **Garage:** |
| **Bsmnt SF:** | **Mobile Home:** |
| **# of Bldgs:** 0 | **Foundation:** |
| **Bldg Code:** | **Heat Method:** |
| **Fireplace:** | **Floor Cover:** |
| | **Roof Cover:** |
| | **Exterior Finish:** |

## Sales Information:

| | |
|---|---|
| **Title Co:** WFG TITLE | **Lender:** |
| **Loan Type:** | **Loan Amt:** |
| **Current Deed Type:** Warranty Deed | **Prior Deed Type:** Warranty Deed |
| **Current Sale Date:** 8/29/2018 | **Prior Sale Date:** 9/13/2012 |
| **Current Sale Price:** $750,000 | **Prior Sale Price:** $620,000 |
| **Current Document No:** 2018-053658 | **Prior Document No:** 2012-059329 |

## Tax Information:

| | |
|---|---|
| **Tax Year:** 2023 | **Tax Amt:** $13,128.13 |
| **Tax Period:** 22-23 | **Assessed Land:** $0 |
| **Market Land:** $458,205 | **Assessed Impv:** $0 |
| **Market Impv:** $572,440 | **Assessed Total:** $652,748 |
| **Market Total:** $1,030,645 | |

## Legal Information:

| | | | |
|---|---|---|---|
| **Map Code:** SEC 19 TWN 02S RNG 02E | **16th Section:** | **Land Use:** Commercial (General) | **Census Tract:** 410050219.001013 |
| **Township:** 02S | **Nbrhd Code:** 20041 | **Subdivision:** PETER M RINEARSON DONATION LAND CLAIM | **Census Block:** |
| **Range:** 02E | **School Dist:** | | **Lot:** 6800 |
| **Section:** 19 | **Prop Class:** COMMERCIAL LAND IMPROVED | | **Zoning:** |
| **Qtr Section:** | | | **Tax Area Code:** 115-040 |
| | | | **Tax Rate:** |

**Legal Desc:** SECTION 19 TOWNSHIP 2S RANGE 2E QUARTER AC TAX LOT 06800

1/1

Lizbeth Hal...    ...cityhomes.com



| | | |
|---|---|---|
| Agent Full | Comm/Industrial | 5/13/2024 11:44AM |

**$1,275,000**  5500 gross sqft

480 PORTLAND AVE Gladstone, OR 97027

**Status:** Sold

**List Date:** 3/17/2023

**Year Built:** 1978/ Updated/Remodeled

**Unit #:**

**XST/Dir:** Portland Ave & Darmouth St.

**DOM:** 1

**Acres:**

**MLS#**

**Show:** Appointment Only

**Offer/Nego:** Call Seller's Agent

**AG:** Tracy Seo

**AG Ph:**

**AG Cell/Text:**

**CoAgent:**

**CoPh:**

**Private:** Fully occupied commercial building for Sale. Please contact the agent for more information.

Last Updated:

**Public:** Fully occupied commercial building for Sale. Please contact the agent for more information.

Last Updated:

## Property Details:

**Property Type:** Commercial

**County:** Clackamas

**Area:** 145

**Zoning:** C2

**#Stry/Bldg:** 1/1

**Ceiling Ht/Ft:**

**Gross SqFt:** 5500

**Office SqFt:**

**Whse SqFt:**

**Mfg SqFt:**

**Internet:** No

**Address:** No

**No Blog:**

**No AVM:**

**Legal:** 109 GLADSTNE BLK 1 TO 21 &FRAC BLKS A&B LT 4 BLK 7

**Tax ID**

**List Type:** Exclusive Right to Sell

**Limited Representation:** No

**Opportunity Zone:**

**CC&R:**

**View:**

**Waterfront:**

**Body Water:**

**Lot Size:** 5,000 to 6,999 SqFt

**Lot Dimensions:**

**Lot SqFt:**

**Road Frontage:**

**Road Surface:** Paved

**Sale Inc:** Building, Land

**Parking:** / On Site

**Construction:** Concrete

**Truck Door:** / At Grade Level

**Roof:** Flat

**Occupancy:** Leased

**Loading:**

**Features:** Conforms to ADA, Display Window, Inside Storage, Outside Lighting, Sign

**Equipment:**

**Unreinforced Masonry Building:**

**Current Use:** Dry Cleaners, Grocery, Restaurant

**Open House:**

**Upcoming Open House:**

**Broker Tour:**

**Upcoming Broker Tour:**

## Utilities:

**Cool:** Central Air

**Water:** Public Water

**Heat:** Forced Air

**Sewer:** Public Sewer

**Fuel:** Gas

**Volts:**

**Amps:**

## Business and Lease Information:

**Restrictions:**

**Actual Gross Income:** $104,400

**Proj. Gross Income:**

**Lease Expire:**

**Business Name:**

**Actual Net Income:** $9,497

**Proj. Net Income:**

**Lease Equip**

**Year Estab:**

**Actual Oper.**

**Expenses:** $94,912

**Proj. Oper. Expenses:**

**Lease Amount:**

**Inventory:**

**Lease Deposit:**

**Lease Type:** 1 - 5 Years Remaining

**Terms:** Call Seller's Agent, Cash, Conventional, Contract

**Assumable Interest Rate:**

**Assumable Remaining Months Ending:**

**Doc Available:** Leases, Operating Expense Report, Rent Records

## Financial:

**Property Tax/Yr:** $9,491.91 / 2022
**Escrow Pref:**

**Spcl Asmt Balance:**
**3rd Party Trans:** No

**Tax Deferral:** No
**BAC:** % 2

**Short Sale:** No
**$ Pre-Approv:** No

**Bank Owned/Real Estate Owned:** No

**Total Comm Differs:** No

## Broker/Agent Data:

**Agent:** Tracy Seo  **Agent Lic** ██████  **Agent Ph:** ████████  **Agent Cell:** ████████  **SAID:** SEOTRACY
**Email(s) Agent:** ████████
**CoAgent:**  **CoSAID:**  **CoBRCD:**  **CoPh:**
**CoAgent Email:**
**Office:** Oregon First  **Office Lic:** ██████  **Office Ph** ████████  **Agent Ext:**  **Fax** ██████
**BRCD:** ORFT11  **Owner Perm. Resid:**  **FIRPTA:** No
**Owner(s):** Lee, Eugene, Lee, Mee Soon  **Owner Phone:**
**Tran:** 6/18/2023  **Exp:**
**Poss:**

## Comparable Information:

**Pending Date:** 3/18/2023  **Original Price:** $1,300,000  **CDOM:** 1  **%SP/OLP:** 98.08
**Sold Date:** 6/13/2023  **List Price:** $1,300,000  **BAID:** SEOTRACY  **%SP/LP:** 98.08
**Terms:** Conventional  **Sold Price:** $1,275,000  **B/Agt:** Tracy Seo  **B/Off:** ORFT11
**B/Off Phone** ██████

© RMLS 2024. ALL RIGHTS RESERVED. - INFORMATION NOT GUARANTEED AND SHOULD BE VERIFIED.
SQUARE FOOTAGE IS APPROXIMATE & MAY INCLUDE BOTH FINISHED & UNFINISHED AREAS - CONSULT BROKER FOR INFO.
SCHOOL AVAILABILITY SUBJECT TO CHANGE.

Lizbeth Hale | Tree City Real Estate    503-557-1260 lizbeth@treecityhomes.com

Agent Full                    Comm/Industrial                    5/13/2024 11:44AM

**$985,000**    3604 gross sqft

**1722 8TH AVE West Linn, OR 97068**

| | |
|---|---|
| **Status:** Sold | **DOM:** 34 |
| **List Date:** 8/10/2023 | **Acres:** 0.27 |
| **Year Built:** 1960/ Existing | **MLS#:** ▓▓▓ |
| **Unit #:** | |
| **XST/Dir:** 10th Street, Right on 8th Ave | |

**Show:** See Remarks, Showing Time, Text Seller's Agent
**Offer/Nego:** Seller's Agent Only
**AG:** Tracy Hasson
**AG Ph:** ▓▓▓
**AG Cell/Text:** ▓▓▓
**CoAgent:**
**CoPh:**

**Private:** Please use Showing Time to schedule. Also listed as residential listing under RMLS# 23639961. Zoned mixed use for residential or commercial, Buyer to do due diligence. Home currently setup as residence. Seller rent back if possible. See attached floor plan.
Last Updated:

**Public:** This West Linn gem is nestled in the heart of Historic Willamette and setup perfectly for a future dental office, hair salon, office space and more. Currently residential but zoned mixed use allowing for commercial opportunity. The home offers an abundance of character and tasteful updates throughout. The main level includes the ensuite primary with sitting area and walk in closet, a spare bedroom or den, additional full bathroom, large living room with fireplace, dining room and a beautifully updated kitchen. The full basement comes with a huge bonus room with wet bar and fireplace, 2 spare bedrooms, a full bathroom, large laundry room, mechanical room and flex space. The low maintenance enjoys raised garden beds, trex decking, stamped concrete and beautiful landscaping. In addition to the updated finishes, rest easy with the upgraded electrical, plumbing, windows, mechanical, gutters, roof, siding and more. Walk to main street, Willamette Park or the public dock!
Last Updated:

## Property Details:

| | | | |
|---|---|---|---|
| **Property Type:** Commercial | **Legal:** 147 WILLAMETTE TRACTS PT LT 45 | **Lot Size:** 10,000 to 14,999 SqFt | **Current Use:** Other |
| **County:** Clackamas | | **Lot Dimensions:** | **Open House:** |
| **Area:** 147 | **Tax ID:** ▓▓▓ | **Lot SqFt:** | **Upcoming Open House:** |
| **Zoning:** MU | **List Type:** Exclusive Right to Sell | **Road Frontage:** | **Broker Tour:** |
| **#Stry/Bldg:** 2/1 | **Limited Representation:** No | **Road Surface:** Paved | **Upcoming Broker Tour:** |
| **Ceiling Ht/Ft:** | **Opportunity Zone:** | **Sale Inc:** Building | |
| **Gross SqFt:** 3604 | **CC&R:** | **Parking:** 6 / On Site, On Street | |
| **Office SqFt:** | **View:** | **Construction:** Cedar, Full Basement, Wood Siding | |
| **Whse SqFt:** | **Waterfront:** | **Truck Door:** | |
| **Mfg SqFt:** | **Body Water:** | **Roof:** Composition | |
| **Internet:** Yes | | **Occupancy:** Other | |
| **Address:** Yes | | **Loading:** | |
| **No Blog:** | | **Features:** | |
| **No AVM:** | | **Equipment:** Unreinforced Masonry Building | |

## Utilities:

| | | |
|---|---|---|
| **Cool:** Central Air | **Heat:** Forced Air | **Fuel:** Gas |
| **Water:** Public Water | **Sewer:** Public Sewer | **Volts:** |
| | | **Amps:** 200 |

## Business and Lease Information:

Restrictions:
Actual Gross Income: $0
Proj. Gross Income:
Lease Expire:
Lease Type:
Terms: Cash, Conventional, FHA, VA Loan
Assumable Interest Rate:
Assumable Remaining Months Ending:
Doc Available:

Business Name:
Actual Net Income: $0
Proj. Net Income:
Lease Equip

Year Estab:
Actual Oper. Expenses: $0
Proj. Oper. Expenses:
Lease Amount:

Inventory:
Lease Deposit:

## Financial:

Property Tax/Yr: $8,707.42 /
2022
Escrow Pref: WFG - Jenn Riba

Spcl Asmt Balance:
3rd Party Trans: No

Tax Deferral: No
BAC: % 2.5

Short Sale: No
$ Pre-Approv:

Bank Owned/Real Estate Owned: No

Total Comm Differs: No

## Broker/Agent Data:

Agent: Tracy Hasson        Agent Lic: ███        Agent Ph: ███        Agent Cell: ███        SAID: HASSONT
Email(s) Agent: ███
CoAgent:        CoSAID:        CoBRCD:        CoPh:
CoAgent Email:
Office: Cascade Hasson        Office Lic: ███        Office Ph: ███        Agent Ext:        Fax:
Sotheby's International
Realty
BRCD: CAHS01        Owner Perm. Resid:        FIRPTA: No
Owner(s): ERWIN W ROSAL, LAURA L        Owner Phone:
ROSAL
Tran: 10/27/2023        Exp:
Poss: Seller Rent Back

## Comparable Information:

Pending Date: 9/13/2023        Original Price: $1,100,000        CDOM: 83        %SP/OLP: 89.55
Sold Date: 10/27/2023        List Price: $1,049,000        BAID: JBURGUM        %SP/LP: 93.9
Terms: Conventional        Sold Price: $985,000        B/Agt: Jim Burgum        B/Off: MRER01
                                                                              B/Off Phone: ███

© RMLS 2024. ALL RIGHTS RESERVED. - INFORMATION NOT GUARANTEED AND SHOULD BE VERIFIED.
SQUARE FOOTAGE IS APPROXIMATE & MAY INCLUDE BOTH FINISHED & UNFINISHED AREAS - CONSULT BROKER FOR INFO.
SCHOOL AVAILABILITY SUBJECT TO CHANGE.



**Lizbeth Hale | Tree City Real Estate**  cityhomes.com

| | |
|---|---|
| Agent Full | Comm/Industrial | 5/13/2024 11:44AM |

**$1,447,000**  6144 gross sqft

**2500 WILLAMETTE FALLS DR** West Linn, OR 97068

**Status:** Sold — **DOM:** 41
**List Date:** 8/17/2023 — **Acres:**
**Year Built:** 1989/ Existing — **MLS#:**
**Unit #:**
**XST/Dir:** Quarter Mile East of 10th street on Willamette Falls Dr

**Show:** Appointment Only, Call Seller's Agent, Occupied, Seller's Agent Must Accompany, Security System, See Remarks
**Offer/Nego:** Call Seller's Agent
**AG:** Peter Jameson
**AG Ph:**
**AG Cell/Text:**
**CoAgent:** Erin Jameson Maher
**CoPh:**

**Private:** Interior showings subject to acceptable offer. Do not disturb tenants Great opportunity for owner operator with instant income. Vacancies for your own business if desired. Zoned commercial. Long term tenants with businesses such as construction, counseling & marketing. Upper & lower lobbies/waiting areas. Community kitchen. Location is easily accessible w/plenty of off-street parking. Roof is 5 years old & updated HVAC. Easy I-205 freeway access.
**Last Updated:**

**Public:** Interior showings subject to acceptable offer. Do not disturb tenants. Great opportunity for owner operator with instant income. Vacancies for your own business if desired. Zoned commercial. Long term tenants with businesses such as construction, counseling & marketing. Upper & lower lobbies/waiting areas. Community kitchen. Location is easily accessible w/plenty of off-street parking. Roof is 5 years old & updated HVAC. Easy I-205 freeway access. Minutes to Historic Willamette District in West Linn.
**Last Updated:**

## Property Details:

**Property Type:** Office
**County:** Clackamas
**Area:** 147
**Zoning:** COMM
**#Stry/Bldg:** 2/1
**Ceiling Ht/Ft:** 9
**Gross SqFt:** 6144
**Office SqFt:** 6000
**Whse SqFt:** 0
**Mfg SqFt:** 0
**Internet:** Yes
**Address:** Yes
**No Blog:** No
**No AVM:** No

**Legal:** 147 WILLAMETTE TRS PT TR 32 &VAC ST
**Tax ID:**
**List Type:** Exclusive Right to Sell
**Limited Representation:** No
**Opportunity Zone:**
**CC&R:** No
**View:**
**Waterfront:**
**Body Water:**

**Lot Size:** 20,000 SqFt to .99 Acres
**Lot Dimensions:**
**Lot SqFt:**
**Road Frontage:** 0
**Road Surface:** Paved
**Sale Inc:** Building, Land, Sign
**Parking:** 26 / On Site, On Street
**Construction:** Wood Frame, Wood Siding
**Truck Door:** 0
**Roof:** Composition
**Occupancy:** Leased
**Loading:** No Loading Facilities
**Features:** Office, Outside Lighting, Sign
**Equipment:** Security System, Smoke Detector
**Unreinforced Masonry Building:**

**Current Use:** Multi-Family, Office, Professional Service
**Open House:**
**Upcoming Open House:**
**Broker Tour:**
**Upcoming Broker Tour:**
**PDF Doc(s):** 1

## Utilities:

**Cool:** Central Air
**Water:** Public Water

**Heat:** Forced Air - 90%
**Sewer:** Public Sewer

**Fuel:** Gas
**Volts:** 220
**Amps:** 400

## Business and Lease Information:

Restrictions:
Actual Gross Income: $76,296
Proj. Gross Income: $85,000
Lease Expire:

Business Name:
Actual Net Income: $32,276
Proj. Net Income: $50,000
Lease Equip No

Year Estab: 1989
Actual Oper.
Expenses: $44,020
Proj. Oper. Expenses: $35,000
Lease Amount: $76,296

Inventory:
Lease Deposit:

Lease Type: 1 - 5 Years Remaining, Month To Month
Terms: Cash, Conventional
Assumable Interest Rate:
Assumable Remaining Months Ending:
Doc Available: Floor Plan, Profit & Loss Statement, Rent Records

## Financial:

Property Tax/Yr: $15,573.56 / 2022
Escrow Pref: WFG Trevor Cheyne

Spcl Asmt Balance:
3rd Party Trans: No

Tax Deferral: No
BAC: % 2.25

Short Sale: No
$ Pre-Approv:

Bank Owned/Real Estate Owned: No

Total Comm Differs: No

## Broker/Agent Data:

Agent: Peter Jameson       Agent Lic: ███       Agent Ph: ███       Agent Cel ███       SAID: JAMESONP
Email(s) Agent ███
CoAgent: Erin Jameson Maher    CoSAID: MAHERER         CoBRCD: JAMC01         CoPh: ███
CoAgent Email: ███
Office: J Residential       Office Lic: ███       Office Ph: ███       Agent Ext:       Fax:
Properties
BRCD: JAMC01              Owner Perm. Resid: Yes              FIRPTA: No
Owner(s): MENDIOLA CHRISTINE M    Owner Phone:
Tran: 12/13/2023              Exp:
Poss: Close Of Escrow

## Comparable Information:

Pending Date: 9/27/2023
Sold Date: 12/12/2023
Terms: Conventional

Original Price: $1,500,000
List Price: $1,500,000
Sold Price: $1,447,000

CDOM: 41
BAID: JAMESONP
B/Agt: Peter Jameson

%SP/OLP: 96.47
%SP/LP: 96.47
B/Off: JAMC01
B/Off Phone ███

© RMLS 2024. ALL RIGHTS RESERVED. - INFORMATION NOT GUARANTEED AND SHOULD BE VERIFIED.
SQUARE FOOTAGE IS APPROXIMATE & MAY INCLUDE BOTH FINISHED & UNFINISHED AREAS - CONSULT BROKER FOR INFO.
SCHOOL AVAILABILITY SUBJECT TO CHANGE.

Lizbeth Hale     Tree City Real Estate                          503-757-1869    lizbeth@treecityhomes.com

**Tax Report**
Tax ID: ▮▮▮▮▮▮▮                                                                    5/15/2024 4:45PM

## Clackamas County, OR:

**Prop Addr:** 16001 SE MCLOUGHLIN BLVD   **Latest Listing ID:** 23064848
MILWAUKIE , OR 97267-4649                **County:** Clackamas
                                         **Carrier Rt:** C006

## Sales Information:

**Title Co:** FIRST AMERICAN        **Lender:** US BANK NA
**Loan Type:** Commercial           **Loan Amt:** $1,062,500

## Owner Information:

**Owner Name:** MCLOUGHLIN INVESTMENT   **Phone:**
REAL ESTATE LLC                         **Carrier Rt:**
**Owner Addr:** 16001 SE MCLOUGHLIN BLVD
MILWAUKIE , OR 97267

| | | |
|---|---|---|
| **Current Deed Type:** Bargain and Sale Deed | **Prior Deed Type:** Intrafamily Transfer |
| **Current Sale Date:** 8/31/2017 | **Prior Sale Date:** 8/12/2015 |
| **Current Sale Price:** $1,250,000 | **Prior Sale Price:** $0 |
| **Current Document No:** 2017-059710 | **Prior Document No:** 2015-054167 |

## Land Information:

**Lot SqFt:** 28314            **Acreage:** 0.65

## Tax Information:

**Tax Year:** 2023             **Tax Amt:** $11,021.94
**Tax Period:** 22-23          **Assessed Land:** $0
**Market Land:** $925,069      **Assessed Impv:** $0
**Market Impv:** $78,680       **Assessed Total:** $569,464
**Market Total:** $1,003,749

## Building Information:

**Year Built:**                **Bedrooms:**
**Stories:**                   **Bathrooms:** 0
**Living SF:**                 **Parking SF:**
**Bldg SF Ind:**               **Garage:**
**Bsmnt SF:**                  **Mobile Home:**
**# of Bldgs:** 0              **Foundation:**
**Bldg Code:**                 **Heat Method:**
**Fireplace:**                 **Floor Cover:**
                               **Roof Cover:**
                               **Exterior Finish:**

## Legal Information:

**Map Code:** SEC 12 TWN 02S RNG 01E   **16th Section:**          **Land Use:** Commercial (General)   **Census Tract:** 410050217.001000
**Township:** 02S                      **Nbrhd Code:** 20050      **Subdivision:**                     **Census Block:**
**Range:** 01E                         **School Dist:**                                                **Lot:** 200
**Section:** 12                        **Prop Class:** COMMERCIAL LAND IMPROVED                        **Zoning:**
**Qtr Section:**                                                                                       **Tax Area Code:** 012-057
                                                                                                       **Tax Rate:**

**Legal Desc:** SECTION 12 TOWNSHIP 2S RANGE 1E QUARTER DC TAX LOT 00200

Lizbeth Hale    Tree City Real Estate    503-757-1869    lizbeth@treecityhomes.com

**Tax Report**
Tax ID ████████    5/15/2024 4:45PM

## Clackamas County, OR:

Prop Addr: 16001 SE MCLOUGHLIN BLVD
MILWAUKIE , OR 97267-4649

Latest Listing ID: 23064848
County: Clackamas
Carrier Rt: C006

## Owner Information:

Owner Name: MCLOUGHLIN INVESTMENT
REAL ESTATE LLC
Owner Addr: 16001 SE MCLOUGHLIN BLVD
MILWAUKIE , OR 97267

Phone:
Carrier Rt:

## Land Information:

Lot SqFt: 28314    Acreage: 0.65

## Building Information:

| | |
|---|---|
| Year Built: | Bedrooms: |
| Stories: | Bathrooms: 0 |
| Living SF: | Parking SF: |
| Bldg SF Ind: | Garage: |
| Bsmnt SF: | Mobile Home: |
| # of Bldgs: 0 | Foundation: |
| Bldg Code: | Heat Method: |
| Fireplace: | Floor Cover: |
| | Roof Cover: |
| | Exterior Finish: |

## Sales Information:

Title Co: FIRST AMERICAN
Loan Type: Commercial

Lender: US BANK NA
Loan Amt: $1,062,500

| | |
|---|---|
| Current Deed Type: Bargain and Sale Deed | Prior Deed Type: Intrafamily Transfer |
| Current Sale Date: 8/31/2017 | Prior Sale Date: 8/12/2015 |
| Current Sale Price: $1,250,000 | Prior Sale Price: $0 |
| Current Document No: 2017-059710 | Prior Document No: 2015-054167 |

## Tax Information:

| | |
|---|---|
| Tax Year: 2023 | Tax Amt: $11,021.94 |
| Tax Period: 22-23 | Assessed Land: $0 |
| Market Land: $925,069 | Assessed Impv: $0 |
| Market Impv: $78,680 | Assessed Total: $569,464 |
| Market Total: $1,003,749 | |

## Legal Information:

| | | | |
|---|---|---|---|
| Map Code: SEC 12 TWN 02S RNG 01E | 16th Section: | Land Use: Commercial (General) | Census Tract: 410050217.001000 |
| Township: 02S | Nbrhd Code: 20050 | Subdivision: | Census Block: |
| Range: 01E | School Dist: | | Lot: 200 |
| Section: 12 | Prop Class: COMMERCIAL LAND IMPROVED | | Zoning: |
| Qtr Section: | | | Tax Area Code: 012-057 |
| | | | Tax Rate: |

Legal Desc: SECTION 12 TOWNSHIP 2S RANGE 1E QUARTER DC TAX LOT 00200



# 17635 SE McLoughlin Blvd

1,800 - 4,800 SF of Office/Retail Space Available in Milwaukie, OR 97267

Office Space / Oregon / Milwaukie / 17635 SE McLoughlin Blvd, Milwaukie, OR 97267





Call

Message

  **LoopNet™**    **Advertise**

## 17635 SE McLoughlin Blvd

1,800 - 4,800 SF of Office/Retail Space Available in Milwaukie, OR 97267



  

## HIGHLIGHTS

Heavy vehicle traffic

Excellent frontage provides great visibility from McLoughlin Blvd

Located in close proximity to public transportation.

## SPACE AVAILABILITY (2)

Display Rental Rate as     $/SF/YR ⌄

| 1st Floor | | 1st Floor | |
|---|---|---|---|
|  | |  | |
| Size | 1,800 SF | Size | 3,000 SF |
| Term | Negotiable | Term | Negotiable |



Message

LoopNet

**17635 SE McLoughlin Blvd**
1,800 - 4,800 SF of Office/Retail Space Available in Milwaukie, OR 97267

## PROPERTY FACTS FOR 17635 SE MCLOUGHLIN BLVD, MILWAUKIE, OR 97267

| | | | |
|---|---|---|---|
| Rental Rate | $8.04 - $19.92/SF/YR | Gross Leasable Area | 5,000 SF |
| Property Type | Retail | Year Built | 1974 |
| Property Subtype | Storefront Retail/Office | Parking Ratio | 2.2/1,000 SF |

## ABOUT THE PROPERTY

Great location with amazing visibility in a high traffic area. Signage spaces available, great amounts of parking spots for customers. Very accessible and a great location for retail, office, or specialty uses. Lease is flexible and negotiable.

2 separate spaces available within property:
1. Retail storefront on McLoughlin. Great visibility
2. Back office/workspace. Can be used as retail, office, specialty etc. Great amounts of storage and work space.

| 24 Hour Access | Bus Line | Monument Signage |
|---|---|---|

**AERIAL**   MAP   TRAFFIC



BIKE SCORE ®
Very Bikeable (79)

Message



**17635 SE McLoughlin Blvd**

1,800 - 4,800 SF of Office/Retail Space Available in Milwaukie, OR 97267



| | 1 MILE | 3 MILE | 5 MILE | 15 MIN DRIVE |
|---|---|---|---|---|
| 2023 Population | 13,275 | 91,761 | 213,753 | 250,711 |
| 2028 Population | 13,301 | 92,245 | 215,448 | 253,758 |
| 2023-2028 Projected Population Growth | 0.2% | 0.5% | 0.8% | 1.2% |
| Median Age | 42.1 | 43.7 | 42.4 | 41.4 |
| College Degree + Higher | 25% | 38% | 39% | 25% |
| Daytime Employees | 3,269 | 42,777 | 101,460 | 117,184 |
| Total Businesses | 466 | 4,527 | 11,842 | 14,759 |
| Average Household Income | $87,093 | $107,000 | $108,598 | $109,227 |
| Median Household Income | $64,460 | $80,020 | $82,633 | $87,976 |
| Total Consumer Spending | $174.9M | $1.4B | $3.2B | $3.6B |
| 2023 Households | 5,387 | 37,080 | 85,235 | 99,057 |
| Average Home Value | $411,287 | $498,398 | $512,273 | $559,834 |

## TRANSPORTATION

### 🚆 TRANSIT/SUBWAY

| | | | |
|---|---|---|---|
| Clackamas Town Center Transit Center RTD 🟢 | | 13 min drive | 5.8 mi |
| SE Fuller Road RTD 🟢 | | 13 min drive | 7.2 mi |
| SE Flavel Street RTD 🟢 | | 16 min drive | 9.3 mi |
| Lents Town Center/SE Foster Road RTD 🟢 | | 20 min drive | 11.3 mi |
| SE Holgate Blvd RTD 🟢 | | 19 min drive | 10.6 mi |

### 🚆 COMMUTER RAIL

| | | | |
|---|---|---|---|
| Tualatin RTD | | 18 min drive | 12.7 mi |

Message



5/6

  LoopNet™  ⊘  **Advertise**

## 17635 SE McLoughlin Blvd
1,800 - 4,800 SF of Office/Retail Space Available in Milwaukie, OR 97267

Wilsonville | 24 min drive | 17.0 mi

| | | | |
|---|---|---|---|
| Listing ID: 30543956 | Date on Market: 1/5/2024 | Last Updated: 3/27/2024 | Address: 17635 SE McLoughlin Blvd, Milwaukie, OR 97267 |

The LoopNet service and information provided therein, while believed to be accurate, are provided "as is". LoopNet disclaims any and all representations, warranties, or guarantees of any kind.

About Us

Contact Us

Search

Find a Broker

Product Overview

Mobile

Terms of Use

Privacy Policy

Connect with us

  

© 2024 CoStar Group

Message

5/15/24, 4:43 PM

Lizbeth Hale    Tree City Real Estate          503-757-1869    lizbeth@treecityhomes.com

**Tax Report**
Tax ID: ▇▇▇▇▇▇                                                                                5/15/2024 4:43PM

### Clackamas County, OR:

| | | | |
|---|---|---|---|
| **Prop Addr:** 35 82ND DR GLADSTONE , OR 97027-2549 | **Latest Listing ID:**<br>**County:** Clackamas<br>**Carrier Rt:** C001 | **Sales Information:**<br>**Title Co:** FIRST AMERICAN TITLE INS CO<br>**Loan Type:** | **Lender:**<br>**Loan Amt:** |

**Sales Information:**

| | |
|---|---|
| **Current Deed Type:** | **Prior Deed Type:** |
| **Current Sale Date:** | **Prior Sale Date:** |
| **Current Sale Price:** | **Prior Sale Price:** |
| **Current Document No:** | **Prior Document No:** |

### Owner Information:

**Owner Name:** BNNK INVESTMENTS LLC
**Owner Addr:** 4445 SW CARL PL PORTLAND , OR 97239

**Phone:**
**Carrier Rt:**

### Land Information:

**Lot SqFt:** 37026        **Acreage:** 0.85

**Tax Information:**

**Tax Year:** 2023            **Tax Amt:** $17,317.93
**Tax Period:** 22-23        **Assessed Land:** $0
**Market Land:** $611,139     **Assessed Impv:** $0
**Market Impv:** $749,010     **Assessed Total:** $861,070
**Market Total:** $1,360,149

### Building Information:

| | |
|---|---|
| **Year Built:** | **Bedrooms:** |
| **Stories:** | **Bathrooms:** 0 |
| **Living SF:** | **Parking SF:** |
| **Bldg SF Ind:** | **Garage:** |
| **Bsmnt SF:** | **Mobile Home:** |
| **# of Bldgs:** 0 | **Foundation:** |
| **Bldg Code:** | **Heat Method:** |
| **Fireplace:** | **Floor Cover:** |
| | **Roof Cover:** |
| | **Exterior Finish:** |

### Legal Information:

| | | | |
|---|---|---|---|
| **Map Code:** SEC 20 TWN 02S RNG 02E<br>**Township:** 02S<br>**Range:** 02E<br>**Section:** 20<br>**Qtr Section:** | **16th Section:**<br>**Nbrhd Code:** 20041<br>**School Dist:**<br>**Prop Class:** COMMERCIAL LAND IMPROVED | **Land Use:** Commercial (General)<br>**Subdivision:** | **Census Tract:** 410050220.002014<br>**Census Block:**<br>**Lot:** 401<br>**Zoning:**<br>**Tax Area Code:** 115-045<br>**Tax Rate:** |

**Legal Desc:** SECTION 20 TOWNSHIP 2S RANGE 2E TAX LOT 00401

1/1